David J. YOKUM, Plaintiff–Appellant,

v.

UNITED STATES POSTAL SERVICE, Defendant–Appellee.

No. 88–2888.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1989.

Decided June 8, 1989.

have provided no assistance to the Court in deciding the appeal.

Gilbert Kenneth Davis, for plaintiff-appellant.

Kevin Barclay Rachel (Lori Joan Dym, Washington, D.C., Office of Labor Law, U.S. Postal Service; Henry E. Hudson, U.S. Atty., Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., Jesse L. Butler, Asst. Gen. Counsel on brief), for defendant-appellee.

Before WINTER, HALL and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge:

David J. Yokum appeals the dismissal of his wrongful discharge claim against the United State Postal Service. The district court concluded that it did not have subject matter jurisdiction over the case, inasmuch as the Civil Service Reform Act of 1978 (CSRA or the Act), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified, as amended, at 5 U.S.C. § 1101 note) precludes judicial review of administrative personnel decisions adverse to the interests of "nonpreference eligible" postal workers. We affirm.

I

At the time of the events giving rise to this lawsuit, Yokum was the Stations/Branches Operations Manager at the

Oakton, Virginia Postal Annex. He reported directly to the Postmaster of the Vienna, Virginia post office.

On June 19, 1986, six postal employees submitted a complaint letter to Gerald F. Merna, Manager of the Postal Service's Northern Virginia Management Sectional Center. The letter charged that Yokum had sexually harassed a number of employees of the Vienna and Oakton postal facilities. Merna referred the complaint to Delivery Services Analyst Jacquelynn Estes, who conducted an investigation and ultimately submitted a comprehensive report to Vienna Postmaster Dempsey White. White then referred the case to James Rogers, who served as the Vienna facility's Superintendent of Postal Operations.

On August 18, 1986, Rogers sent Yokum a "Notice of Proposed Removal," which charged the appellant with sexual harassment, unethical conduct and unsatisfactory performance of his managerial duties. The written notice detailed various incidents in which Yokum allegedly harassed a number of his subordinates. In letters dated August 27, 1986 and September 8, 1986, Yokum denied all charges.

Acting on Rogers' recommendation, Postmaster White ultimately issued a decision letter finding that all charges were substantiated by the evidence. The letter notified Yokum that the Postal Service intended to dismiss him effective October 10, 1986. Pursuant to Part 650 of the Postal Service's Employee and Labor Relations Manual (the Manual),[1] Yokum then requested a formal evidentiary hearing, which Hearing Officer James M. Gardner conducted over three days beginning on February 10, 1987. On April 2, 1987, Gardner issued a report sustaining the sexual harassment and unethical conduct charges

---

1. Part 650, which is captioned "Non–Bargaining Disciplinary, Grievance and Appeal Procedures," governs internal administrative appeals of personnel decisions adverse to the interests of postal workers who are not otherwise protected by grievance provisions in independent collective bargaining agreements. *See* Supplemental Joint Appendix at 242–44. The Postal Service established the Part 650 procedure pursuant to congressional mandate. *See* 39 U.S.C. § 1001(b).

Section 652.242 of the Manual provides for informal evidentiary hearings on adverse personnel actions. Under §§ 652.25 and 652.26, aggrieved employees may appeal a hearing officer's factual findings and recommendations to "Step I" and "Step II" administrative officers. Under § 652.26, the "Step II" official's disposition of any appeal is final.

and upholding White's original dismissal order.

Yokum then pursued a "Step I" appeal, seeking independent review of Gardner's report by Eastern Regional Postmaster General Johnny F. Thomas. Thomas' designee, Jack West, examined the documentary evidence and a transcript of the February hearing and concluded that Gardner's original findings were "fully supported by a preponderance of the record evidence." Supplemental Joint Appendix at 226. West therefore sustained Postmaster White's original dismissal order. Yokum then filed a final petition for review with the Assistant Postmaster General for Employee Relations, Joel S. Trosch, who served as a "Step II" appeals officer. Trosch also conducted an independent review of the record. Finding that the original sexual harassment and unethical conduct charges were supported by a preponderance of the available evidence, Trosch sustained the dismissal order.

Having exhausted his administrative remedies, Yokum then filed the present wrongful discharge action, invoking a purported "well-recognized *nonstatutory* right of Federal Courts to review Postal Service adverse administrative actions." Complaint Paragraph 1, Joint Appendix at 2 (emphasis in original). The Postal Service responded with a Rule 12(b)(1) motion to dismiss the complaint, claiming that the district court lacked subject matter jurisdiction over the case because, as a general matter, Congress' enactment of the CSRA implicitly barred judicial review of administrative personnel actions adverse to the interests of nonpreference eligible postal workers. The district court granted the motion from the bench, and this appeal followed.

## II

■ The four circuit courts that have considered the jurisdictional question presented in this case all have concluded that nonpreference eligible Postal Service employees have neither a statutory nor nonstatutory right to judicial review of adverse personnel actions. *Royals v. Tisch*, 864 F.2d 1565, 1567–68 (11th Cir.1989); *Diaz v. United States Postal Service*, 853 F.2d 5, 7–9 (1st Cir.1988); *Witzkoske v. United States Postal Service*, 848 F.2d 70, 71–73 (5th Cir.1988). *See also Parker v. United States Postal Service*, 859 F.2d 922 (6th Cir.1988) (unpublished). For the reasons which follow, we agree and hold that the district court properly dismissed the present case for want of subject matter jurisdiction.

## A

Chapter 75 of the CSRA, 5 U.S.C. § 7501 *et seq.*, establishes certain procedural safeguards for employees who are the subject of adverse personnel actions.[2] Subchapter II of Chapter 75, *id.* § 7511–14, covers major adverse actions, including removal from office. *Id.* § 7512(1). A discharged employee entitled to the protection of subchapter II may appeal an agency's dismissal order to the Merit Systems Protection Board (MSPB), *id.* § 7513(d), and ultimately to the United States Court of Appeals for the Federal Circuit. *Id.* §§ 7703(a)(1) & 7703(b)(1). The appellate court may then set aside the dismissal, but only upon a showing that the discharge order was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .; obtained without procedures required by law, rule, or regulation having been followed . . .; [or] unsupported by substantial evidence." *Id.* § 7703(c)(1)–(3).

These rights to administrative and judicial review of adverse personnel decisions are not, however, available to all federal employees—nor to all postal workers. Instead, subchapter II's procedural protections are available only to those civil servants who qualify under the statutory definition of a covered employee:

(a) For the purpose of applying this subchapter [II]—

---

2. For most purposes, postal workers are exempt from the civil service statutes. 39 U.S.C. § 410(a). Congress has specifically provided, however, that "the provisions of chapter 75 of title 5 [5 U.S.C. § 7501 *et seq.*] shall apply to officers and employees of the Postal Service." *Id.* § 1005(a)(1).

(1) "employee" means—

(A) an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or who has completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less; and

(B) a preference eligible in an Executive agency in the excepted service, *and a preference eligible in the United States Postal Service* or the Postal Rate Commission, who has completed 1 year of current continuous service in the same or similar positions....

*Id.* § 7511(a)(1) (emphasis supplied). Yokum concedes that he was neither a "competitive service" nor "preference eligible" civil servant, hence that he cannot seek independent administrative or judicial review under subchapter II itself.[3] The remaining question, therefore, is whether *non* preference eligible postal workers are nevertheless entitled, as the appellant claims, to some independent, nonstatutory right of judicial review.

### B

The Postal Service essentially claims that, by making the procedural protections of subchapter II available only to a narrow class of preferentially treated civil servants, Congress evinced an affirmative intent to *preclude* administrative or judicial review of any adverse personnel decisions affecting *other* federal employees. In narrower terms, the argument is that Congress *could* have broadened § 7511(a)(1) to cover nonpreference eligible postal workers. Since it did not, it must have meant to abrogate any nonstatutory right of judicial review purportedly available to employees so classified.

Yokum's response is straightforward. He claims that, by simply consolidating in the MSPB and the Court of Appeals for the Federal Circuit all administrative and judicial review of personnel actions taken against *some* employees, Congress did not necessarily prohibit resort to the courts by other civil servants. In *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), however, the Supreme Court specifically rejected the similar claim of a nonpreference eligible member of the excepted service—that is, a civil servant who, like Yokum, did not qualify under § 7511(a)(1) as an employee and therefore could not seek the protection of subchapter II.

---

**3.** The CSRA classifies civil service positions in the following three general categories: (1) the "Senior Executive Service," 5 U.S.C. § 3132(a)(2) (certain high-level Executive branch positions for which nomination by the President and confirmation by the Senate is not required); (2) the "competitive service," *id.* § 2102 (all other positions for which nomination and confirmation is not required and which are not specifically excepted from the competitive service by statute or by statutorily authorized regulation); and (3) the "excepted service," *id.* § 2103 (all positions not classified in the "Senior Executive Service" or "competitive service"). As indicated, however, the Postal Service and its employees are largely exempt from CSRA coverage, hence from this three-tiered classification scheme. *See* 39 U.S.C. § 410(a). Most postal workers instead serve in the "postal career service," 39 U.S.C. § 1001(b), and are by definition "outside the competitive service." *Bredehorst v. United States,* 677 F.2d 87, 89, 230 Ct.Cl. 399 (1982).

Armed forces veterans and certain of their close relatives qualify as "preference eligibles" regardless of the civil service classification of their positions. 5 U.S.C. § 2108(3). *Cf.* 39 U.S. C. § 1005(a)(2) ("preference eligible" postal employees to be treated as "preference eligible" competitive service employees subject to provisions of Title 5). These employees are entitled to preferential treatment under various provisions of the civil service statutes.

In 1987, Congress extended the procedural protections of CSRA subchapter II to supervisory and management employees of the Postal Service. 39 U.S.C. § 1005(a)(4)(A)(ii). Yokum concedes, however, that he is not eligible for protection under new § 1005(a), since Congress specifically limited the applicability of the 1987 amendments to personnel actions commenced after September 16, 1987, and the Postal Service initiated discharge proceedings in the present case well before that date. *See* Pub.L. No. 100–90, § 1(b)(2), 101 Stat. 673 (1987) ("savings clause" of 1987 amendments to 39 U.S.C. § 1005(a)). Of course, even if Yokum were entitled to seek independent review of the Postal Service's discharge order, jurisdiction would lie first in the MSPB, and then in the Court of Appeals for the Federal Circuit—but never in federal district court. 5 U.S.C. §§ 7513(d) & 7703. *See Witzkoske,* 848 F.2d at 72 n. 2.

The aggrieved employee in *Fausto* argued that "the exclusion of nonpreference members of the excepted service from the definitional sections of Chapter 75 [of the CSRA]" constituted "congressional silence on the issue of what review these employees should receive for the categories of personnel action covered by that chapter, including [an action] which would come within Subchapter II," leaving such employees "free to pursue whatever judicial remedies [they] would have had before enactment of the CSRA." *Id.*, 484 U.S. at ——, 108 S.Ct. at 673. Rejecting that claim, the Court emphasized the overarching "purpose of the CSRA, the entirety of its text, and the structure of review that it establishes." *Id.* 484 U.S. at ——, 108 S.Ct. at 671.

> The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference eligible excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter. Their exclusion from the scope of those protections can hardly be explained on the theory that Congress simply did not have them in mind, since ... Congress specifically included in Chapter 75 *preference eligible* excepted service employees[. 5 U.S.C.] § 7511(a)(1)(B).... It seems to us evident that the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by Chapter 75.

*Id.*, 484 U.S. at ——, 108 S.Ct. at 673–74 (emphasis in original).

■ Like the *Parker, Royals, Diaz,* and *Witzkoske* courts, we think *Fausto* settles the jurisdictional question here at issue.

For the purpose of determining whether the definitional provisions of Chapter 75 preclude judicial review in the present case, it is of no consequence that Yokum is a postal worker, rather than a member of the excepted service. Section 7511(a)(1)(B) just as specifically excludes nonpreference eligible Postal Service employees from the protection of subchapter II as it does nonpreference eligible members of the excepted service. Since Congress clearly considered the question of *which* postal workers would be entitled to judicial review under Chapter 75 and ultimately chose to grant the right only to preference eligibles, it must also have intended to preclude judicial review of administrative action affecting *other* members of the "postal career service." *Id.*, 484 U.S. at ——, 108 S.Ct. at 673. Moreover, any recognition of a general right to nonstatutory judicial review would stand at odds with Chapter 75's grant of "preferred status to competitive service and preference eligible employees." *Id.*, 484 U.S. at —— n. 4, 108 S.Ct. at 674 n. 4.

> [I]f excluded classes of employees could get a district court in the first instance to review the merits of the agency's decision, they would be in a better position than preference eligible employees, who must follow the procedural route laid out in Chapter 75. [*Fausto,* 484 U.S. at ——, 108 S.Ct.] at 674. It is clear, however, that Congress intended to provide preference eligible employees with greater safeguards than excluded classes of employees.... *Id.* Therefore, the CSRA precludes the district court from reviewing the merits of an adverse personnel action taken against one who is not covered by Chapter 75 of Title 5.

*Diaz,* 853 F.2d at 9. We agree, then, that "[u]nder *Fausto, any* employee, including one in the Postal Service, who is not included in the provisions of Chapter 75 was intended by Congress not to have the right to judicial review of his dismissal," notwithstanding any "statutory or nonstatutory" procedural protection which postal employees "previously may have enjoyed." *Witz-*

*koske,* 848 F.2d at 73 (emphasis supplied).[4] We therefore hold that the district court properly dismissed this case for want of subject matter jurisdiction. *See Royals,* 864 F.2d at 1568.[5]

### III

For the foregoing reasons, the order of the district court dismissing this case for want of subject matter jurisdiction is affirmed.

AFFIRMED.

**4.** Both before and after Congress enacted the CSRA in 1978, courts routinely (albeit sometimes only implicitly) recognized a nonstatutory right of judicial review of Postal Service personnel actions. These courts typically applied a strict standard of review, however, limiting their inquiry to consideration of whether an adverse administrative decision was arbitrary and capricious or not supported by substantial evidence. *See, e.g., Munnelly v. United States Postal Service,* 805 F.2d 295, 299–300 (8th Cir. 1986); *Boylan v. United States Postal Service,* 704 F.2d 573, 574–75 (11th Cir.1983); *Alsbury v. United States Postal Service,* 530 F.2d 852, 854 (9th Cir.1976); *Harvey v. Nunlist,* 499 F.2d 335, 336 (5th Cir.1974). *Fausto* makes plain, however, that by its design the CSRA abrogated even this limited form of nonstatutory "review on the merits," 484 U.S. at ——, 108 S.Ct. 671–72, notwithstanding what previously may have been thought about its availability. *See Witzkoske,* 848 F.2d at 73 & n. 5.

**5.** We emphasize that the jurisdictional question presented in this case is narrow, and that our decision is accordingly limited. We hold only that, under *Fausto,* nonpreference eligible postal employees cannot seek nonstatutory judicial review on the *merits* of adverse personnel decisions taken at the administrative level. That said, we express no opinion on the question whether such employees might maintain civil actions for damages against supervisory officials on claims of constitutional violations in connection with grievable "adverse actions."

*See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Yokum asserts that he has indeed made such a *Bivens*-type constitutional claim here—by alleging that "the Postal Service failed to provide him with a meaningful and legitimate internal grievance procedure to review disciplinary actions against him, thereby denying his constitutional right to due process of law." Appellant's Br. at 2. *See* Complaint Para. 102, Joint Appendix at 19–20. Without deciding the question, we assume *arguendo* that a federal court would have jurisdiction to entertain a bona fide fourteenth amendment claim of this sort. *See Diaz,* 853 F.2d at 9–10; *Royals,* 864 F.2d at 1568–69. We think it clear, however, that the due process claim allegedly made here is merely an attempt "to have the merits of the Postal Service's proceedings reviewed under the guise of a constitutional violation." *Royals,* 864 F.2d at 1568. The federal courts have repeatedly upheld the Postal Service's internal grievance procedures against due process claims, *see, e.g., Alsbury,* 530 F.2d at 854–55, and the appellant's challenge to the legitimacy of these procedures is, we think, no more than an attempt to reiterate his assertion that the Postal Service's dismissal order was not supported by substantial evidence. *Fausto* makes clear that the federal courts are obliged to rebuff any such attempts to obtain judicial review of administrative personnel actions "on the merits," and our holding is simply that the district court was faithful to that obligation here.