936 F.2d 572
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mildred BANKS, Plaintiff-Appellant,
v.
UNITED STATES POSTAL SERVICE, et al., Defendants-Appellees.
 No. 88-1050.
 United States Court of Appeals, Sixth Circuit.
 June 24, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this civil rights action, plaintiff-appellant Mildred Banks appeals the district court's judgment granting the United States Postal Service's motion to dismiss. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 In 1967, Mildred Banks, a black female, received a competitive appointment to the U.S. Postal Service in Detroit, Michigan, as a substitute distribution clerk. Excepting maternity leave in October of 1968, Banks worked without interruption or incident for approximately nine and one half years. In the fall of 1976, Banks was the successful bidder for the position of OCR Operator PS-5, Tour III.
 
 
 3
 On January 17, 1977, while on duty in her new position, Banks injured her left arm and shoulder in a work-related accident. Banks reported the injury to her supervisor and was examined and treated at an Industrial Clinic the same day. On February 18, 1977, Banks injured her right hand and shoulder. Banks reported the injury to her supervisor and was again examined and treated at an Industrial Clinic the same day. On May 19, 1977, while lifting trays of mail at work, Banks injured her back in the lumbar region. She was transported to the emergency room at Sinai Hospital of Detroit, where she was examined, diagnosed as suffering from a lumbar sprain, treated and released. Banks took medical leave for the May 19 injury and remained off work from May 19 to June 2, 1977. From June 2 through June 14, 1977, Banks worked on light duty status. On June 14, 1977, she returned to work on full-duty status, but was unable to perform her duties. Thus, Banks was absent again due to her injury from June 15 to June 20, 1977. She returned to light duty status on June 21 and worked until August 22, 1977, at which time her back caused her to take leave again. This led to absences from August 23 through August 31, 1977, whereupon Banks returned to light duty status on September 1, remaining through September 26, 1977. Another period of leave occurred from September 27 until October 20, 1977.
 
 
 4
 Banks twice applied for permanent light duty status in September and October of 1977, but the request was denied both times. On October 21, 1977, Banks returned on full duty status and worked until November 1, 1977, but then shifted to light duty status on November 2, 1977. After another period of leave, from November 16 to December 1, 1977, she returned to work on December 1, 1977 but reinjured her back and was forced to stop working yet again.
 
 
 5
 On December 8, 1977, Banks again filed for permanent light duty status. On December 29, 1977, the Postal Service sent and she received a Notice of Removal effective February 8, 1978, the reason assigned being her failure to meet the requirements for her position. The Notice alleged that from August 13, 1977, through December 29, 1977, Banks failed to report for duty on no fewer than forty-two occasions. The Notice stated that "Your undependability in reporting and not being available for duty when needed and as scheduled indicates that you are unable to meet the requirements of your position."
 
 
 6
 Banks filed a grievance pursuant to a collective bargaining agreement between her union and the Postal Service. She also contacted an equal employment opportunity (EEO) counselor, Patricia Bean, on December 14, 1977, and complained that postal managers denied her authorization for prompt medical treatment and permanent light duty status. Banks contended that these actions were discriminatorily based on her race and sex, in violation of Title VII, 42 U.S.C. Sec. 2000e et. seq. On January 5, 1978, she initiated further EEO counseling with Ms. Bean, and alleged that the December 29, 1977, Notice of Removal was discriminatorily based on race and sex. On January 16, 1978, and on March 23, 1978, she filed a formal administrative complaint encompassing the above allegations.
 
 
 7
 Meanwhile, on July 28, 1978, Banks and the Postal Service reached a settlement. The settlement provided that Banks' time off during the grievance would be considered as a long term suspension without pay. She was to be reinstated at the beginning of the first pay period following the signing of the settlement. The settlement also provided that:
 
 
 8
 This settlement is being made with the clear understanding that there will be no back pay involved and that the grievant must meet the attendance requirements of the Postal Service and work at her regular job in a full duty status and her failure to abide by the above will lead to her discharge from the Postal Service.
 
 
 9
 By letter, the Postal Service directed Banks to report to work on September 18, 1978. The letter further stated that if she was unable to report to work she was to submit administratively acceptable medical documentation to Mr. Albert Vreeland, Supervisor of Tour III. Banks was unable to return to work at this time and submitted a note from her treating physician, which indicated that in his medical judgment she was unable to resume her duties. Banks was absent from work from September 18, 1978 to October 19, 1978. Mr. Vreeland rejected the note as administratively unacceptable. He placed Banks on absent without official leave status. On October 19, 1978, Banks received a second Notice of Removal letter, effective November 30, 1978. The removal letter informed Banks that she had the right to file a grievance within fourteen days of receipt of the notice. Banks failed to file a grievance, an EEO complaint, or any other administrative complaint regarding her second discharge. Moreover, she failed to file any complaint of handicap discrimination regarding the first or second discharges.
 
 
 10
 The formal EEO administrative complaints filed on January 16 and March 23, 1978, were combined for a hearing on November 28, 1978. The EEOC recommended findings of no discrimination in each case, which were adopted by the Postal Service in its final agency decision on April 29, 1980.
 
 
 11
 Banks filed a complaint in federal district court on May 29, 1980, alleging that she had been discharged from the Postal Service on the basis of her race and sex, in violation of Title VII. On September 29, 1983, Banks amended her complaint and alleged employment discrimination based on sex, race and handicap. A second amended complaint alleging sex, race and handicap discrimination was filed on August 28, 1984. Finally, a third amended complaint alleging, among other things, violations of Title VII and the Rehabilitation Act was filed on April 30, 1987.
 
 
 12
 The Postal Service moved for summary judgment on September 27, 1987. The Postal Service contended that all of Banks' claims should be dismissed except the count relating to sex and race discrimination. On November 19, 1987, the district court granted most of the Postal Service's motion. The court dismissed counts alleging violations of procedural and substantive due process, bad faith, breach of contract and tortious interference with workers compensation claim. Remaining for trial were the counts alleging sex and race discrimination, handicap discrimination and violation of Postal Service regulations.
 
 
 13
 A bench trial was held on December 14 and 15, 1987. At trial, Banks conceded that there was no evidence of sex or race discrimination and therefore withdrew those claims. After the presentation of plaintiff's evidence, the Postal Service moved for a dismissal pursuant to Fed.R.Civ.P. 41(a), and the district court granted the motion.
 
 
 14
 The district court's dismissal rested on several grounds: (1) "there [was] not a whisper of race or sexual discrimination"; (2) Banks claimed race and sex discrimination and not handicap discrimination; (3) assuming Banks claimed handicap discrimination, the "handicapper act" did not become effective until well after the incidents giving rise to Banks' claim of handicap discrimination; (4) assuming Banks claimed handicap discrimination, Banks failed to exhaust her administrative remedies with respect to a handicap discrimination claim; (5) assuming a nonstatutory right of judicial review of her adverse discharge, the Postal Service substantially complied with applicable procedures; (6) assuming a nonstatutory right of judicial review of her adverse discharge, the discharge was not arbitrary or capricious, but supported by substantial evidence. This timely appeal followed.
 
 
 15
 The sole issue raised on appeal is whether the district court erred in dismissing appellant's claim of handicap discrimination by failing to recognize that appellant had a nonstatutory right of review of the postal service's adverse personnel actions. "The standard for appellate review from a district court's dismissal under Rule 41(b) is to determine if the trial court's factual conclusions were clearly erroneous." Risinger v. Ohio Bureau of Workers' Compensation, 883 F.2d 475, 479 (6th Cir.1989).
 
 II.
 
 16
 We first note that from our review of the record, it appears that a claim based upon handicap discrimination was not raised by Banks until September 29, 1983, in her first amended complaint. In her Equal Employment Opportunity Investigative Affidavit, filed on September 29, 1978, Banks stated that
 
 
 17
 I feel that I was perpetually discriminated against because of my race and sex (black [f]emale) ...
 
 Further, Banks stated that
 
 18
 [M]ale employees were not treated in the same manner as I was in resolving their continued pay and permanent light duty ...
 
 The EEO Investigative Report stated:
 
 19
 (1) The Complainant alleges that she was discriminated against because of her Race (black) and Sex (female) in that she was denied authorization for Proper Treatment by Management on December 1, 1977. (2) That she was refused by Management to be placed in a Permanent Light Duty Status with continuation of pay from December 1, 1977, due to her Race (black) and Sex (female).
 
 
 20
 Finally, the original complaint filed in the district court in 1980 alleged only race and sex discrimination.
 
 
 21
 On appeal, Banks frames the issue as whether
 
 
 22
 There existed at the time that appellant's claims arose in 1976 a non-statutory right to judicial review of U.S. Postal Service personnel actions that were adverse to her if they were arbitrary, capricious or an abuse of discretion.
 
 
 23
 The Postal Service contends that there is no nonstatutory right to judicial review of adverse personnel actions against Postal Service nonpreference eligible employees.
 
 
 24
 Some courts have recognized a nonstatutory right to judicial review of Postal Service actions adverse to its employees. See, e.g., Neal v. United States Postal Service, 468 F.Supp. 958, 961 (N.D.Utah 1979). Courts recognizing such review, however, note that it "is narrowly limited to an inquiry as to whether the Postal Service substantially complied with applicable procedures, whether its actions were arbitrary or capricious, and whether its decision was supported by substantial evidence." Id. at 961.
 
 
 25
 More recently, however, other courts have held that "nonpreference eligible Postal Service employees have neither a statutory nor nonstatutory right to judicial review of adverse personnel actions." Yokum v. United States Postal Service, 877 F.2d 276, 278 (4th Cir.1989); see also Royals v. Tisch, 864 F.2d 1565, 1567-68 (11th Cir.1989); Diaz v. United States Postal Service, 853 F.2d 5, 7-9 (1st Cir.1988); Witzkoski v. United States Postal Service, 848 F.2d 70, 71-73 (5th Cir.1988); see, cf. United States v. Fausto, 484 U.S. 439 (1988) (holding that nonpreference eligible employee of the Fish and Wildlife Service was not entitled to judicial review of the merits of his disciplinary proceedings).
 
 
 26
 Relying on the Supreme Court's decision in Fausto, this court held in Parker v. United States Postal Service, 859 F.2d 922 (6th Cir.1988) (per curiam), cert. denied, 490 U.S. 1048 (1989), that a nonpreference eligible employee does not have a nonstatutory right to judicial review of an adverse Postal Service personnel decision.
 
 
 27
 It is uncontested that Banks was a nonpreference employee. Accordingly, Banks does not have a nonstatutory right to judicial review and the district court was without jurisdiction to review her discharge. See Foster v. Kassulke, 898 F.2d 1144, 1146 (6th Cir.1990) (appellate court can affirm the district court for reasons other than those stated by the district court).
 
 III.
 
 28
 Accordingly, we AFFIRM the judgment of the district court.