Carolyn S. MILLER, Plaintiff,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

No. IP 91–748–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 9, 1993.

Philip H. Hayes, Robert J. Tornatta, Evansville, IN, for plaintiff.

Jill E. Zengler, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, IN, Vanessa A. Miree, U.S. Postal Service, Birmingham, MI, for defendant.

ENTRY DISCUSSING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION

TINDER, District Judge.

This matter comes before the court on the United States Postal Service's motion to dis-

miss for lack of subject matter jurisdiction and failure to state a claim for relief, pursuant to Fed.R.Civ.P. 12(b)(1) and (6) respectively. The court, having considered the motion and the supporting and opposing briefs, finds that the motion to dismiss should be GRANTED.

## I. *Factual Background*

The Plaintiff, Carolyn S. Miller, began employment with the United States Postal Service (the Postal Service) on March 17, 1972. On August 12, 1987, Miller injured her back lifting a bag of boxes while performing her duties as a distribution clerk.

Dr. Robert Collins examined Miller on August 13, 1987, and diagnosed her injuries as back strain. Dr. Collins determined that Miller was totally disabled for all work through August 23, 1987. Dr. Collins indicated that Miller could resume her regular duties on August 24, 1987 with no restrictions.

At the Postal Service's request, Dr. Lee Cattell gave Miller a fitness-for-duty examination on August 19, 1987. Dr. Cattell found that Miller was physically able to return to limited work, with a 15–pound lifting restriction, and with no repetitive bending or twisting for three to four weeks. Dr. Cattell diagnosed Miller's condition as "probable lumbosacral sprain/strain and obesity."

Based upon Dr. Cattell's diagnosis, Miller reported for work on August 20, 1987, but was unable to perform her duties.

The next day, August 21, 1987, Miller's family physician, Dr. Melvin Baird, examined her and diagnosed her as having lumbar strain which should heal in 10 to 14 days. Dr. Baird advised Miller not to work for 10 to 14 days. However, Dr. Baird subsequently issued a report dated October 22, 1987 which indicated that Miller was totally disabled for all work due to her August 12 injuries.

As a result of her injury, Miller applied for and received total disability benefits from the Department of Labor Office of Workers'

Compensation Programs (OWCP) beginning approximately August 24, 1987. Accordingly, the Postal Service placed her in a leave-without-pay status.

At the Postal Service's request, Dr. Arthur Lorber gave Miller a fitness-for duty examination on October 22, 1987. Dr. Lorber found no muscle spasm, and indicated that Miller could return to limited duties, with a 10–pound lifting restriction and diminished bending and stooping.

Based on Dr. Lorber's examination, the OWCP office medical advisor specializing in orthopedics determined that Miller's lumbar strain should have been resolved in six to eight weeks, and her disability should have ceased by October 23, 1987. The medical advisor concluded that Miller should return to work with a 20–pound lifting restriction.

On the other hand, at approximately this same time, Miller's family doctor, Dr. Baird, informed Miller that she was still totally disabled, and that her disability was likely to continue for at least 90 days. Dr. Baird referred Miller to Dr. Robert Silbert, a physical medicine and rehabilitation specialist, for additional therapy.

Dr. Silbert's November 16, 1987 examination of Miller revealed normal neurological findings. However, Dr. Silbert recommended that Miller undergo a physical therapy program. Apparently, Dr. Silbert considered Miller to be partially disabled for work.

To resolve the conflict of opinion among the physicians, the OWCP requested an impartial orthopedic evaluation by Dr. John Beghin, a board-certified orthopedist.

Before Dr. Beghin examined Miller, Patricia Hayes, a postal inspector, contacted Dr. Beghin and provided him with a copy of an investigative report.

On January 11, 1988, Dr. Beghin examined Miller, and found that Miller experienced limited motion of the back due to subjective complaints of pain. Dr. Begin indicated that Miller was probably limited due to "secondary gain."[1] Dr. Beghin noted that Miller

---

1. "[A] secondary psychic or social advantage derived from a symptom or illness, as opposed to paranosic gain.... Secondary gain refers to what else that symptom can accomplish for the individual. For example, ... a soldier who breaks down in combat, the secondary gain ...

complained of tenderness upon palpation of the posterior iliac crest region, which usually signifies "pain exaggeration." He believed she could return to work with no restrictions, but recommended a "functional capacities assessment exam" to more accurately ascertain her level of capability.

Based on the medical evidence on file, the OWCP determined that Miller had no remaining disability due to her August 12, 1987 injury. Therefore, the OWCP proposed terminating Miller's compensation.

In a letter dated February 3, 1988, the Postal Service instructed Miller to return to work at the Lawrence Branch Post Office February 6, 1988. However, Miller failed to return to work as directed. The manager of the Lawrence Branch sent Miller a letter dated February 9, 1988, instructing her to submit medical evidence justifying her absence from work. In response, Miller submitted medical documentation from Dr. Robert Silbert which indicated that she was unable to return to work.

In a February 19, 1988 letter, the Postal Service manager of Safety and Health Services advised Miller that Dr. Silbert's medical documentation was unacceptable because it did not show that Miller was unable to return to work on February 6, 1988, and instructed Miller to report for duty at the Lawrence Branch. The letter further advised that if Miller failed to report for duty, she would be considered "A.W.O.L." (absent without official leave).

In a letter dated February 29, 1988, the OWCP advised Miller that it intended to terminate her compensation benefits because the medical documentation on file indicated that she no longer suffered from a work-related injury. The OWCP gave Miller 30 days to submit additional evidence or argument to support her claim.

In response, Miller submitted medical reports from Dr. Silbert and Dr. Raymond Pierce.[2] Drs. Silbert and Pierce diagnosed

Miller as being totally disabled for work. However, on May 27, 1988, the OWCP found that the documentation submitted by Drs. Pierce and Silbert was inadequate to justify continuing Miller's compensation benefits.

In its June 1, 1988 decision, the OWCP advised Miller that the weight of the medical evidence established that Miller's work-related disability ceased June 5, 1988, and accordingly it would terminate her workers' compensation benefits June 5, 1988.

Miller filed an application of review by the OWCP director on June 16, 1988. However, on September 14, 1988, the OWCP denied Miller's application because the evidence submitted in support of the application was repetitive and lacked relevance.

On November 23, 1988, the Postal Service issued a "notice of removal," advising that Miller would be terminated from her employment effective December 30, 1988 because she had been in a leave-without-pay status for more than a year.

Based upon the evaluations of Drs. Pierce and Lorber, Miller requested a light-duty assignment consisting of a four-hour workday, no standing, no bending, no reaching, and a five-pound weight restriction. However, the Postal Service determined on December 14, 1988 that no such work was available.

The American Postal Workers Union, AFL–CIO (APWU) filed a grievance, challenging the Postal Service's removal action. On or about December 29, 1988, the Postal Service and the APWU entered into a written grievance resolution at Step 1 of the grievance process. The agreement provided that the Postal Service would (1) rescind its removal action until Miller could be examined by Dr. Patel, the postal medical officer for the Indianapolis post office; (2) schedule Miller for a fitness-for-duty examination by Dr. Lorber; and (3) request a complete diagnosis and prognosis from Miller's treating physician, Dr. Pierce.

---

would be that he would avoid returning to combat. This would be sort of a bonus." *The Sloane–Dorland Annotated Medical–Legal Dictionary* (West 1987).

**2.** Apparently, Dr. Pierce saw Miller December 5, 1988. At that time, he indicated that she should be able to return to work December 28, 1988 on a 4–hour per day basis with no standing, no bending, no reaching, and a 5–pound lifting restriction.

Dr. Patel, the Postal Service physician, was unable to examine Miller due to scheduling complications.

On January 24, 1989, Dr. Lorber conducted a fitness-for-duty examination of Miller. In his January 25, 1989 report, Dr. Lorber indicated that Miller could return to her full-time job, but recommended diminished bending and stooping and a 35–pound lifting restriction.

On January 27, 1989, Dr. Pierce issued a report which, although ambiguous, appeared to indicate that Miller could return to work on four-hour-per-day basis with no bending, stooping, reaching, or lifting more than five pounds.[3]

On April 24, 1989, the OWCP appeals board determined that Dr. Beghin's opinion that Miller could return to work without restriction was controlling.

On June 15, 1989, the Postal Service issued its "notice of removal" indicating that Miller would be removed from Postal Service employment on July 20, 1989 because she had been on a leave-without-pay status for over a year.

Miller, through the APWU, filed another grievance on June 23, 1989, challenging the Postal Service's removal action, arguing that she was ready and willing to work within her physician's recommended restrictions.

On July 20, 1989, the Postal Service removed Miller from her employment because she had been on a leave-without-pay status for more than a year.

Miller's grievance was denied at Steps 1, 2, and 3 of the grievance process. The APWU filed an appeal with the Chicago Regional Office of the Merit Systems Protection Board, which was dismissed April 24, 1989 because Miller was not entitled to appeal rights under 5 U.S.C. § 7511.

Miller then filed a claim for unemployment benefits with the Indiana Department of Employment and Training Services. The claim

initially was disapproved. However, on September 26, 1989, the initial decision was reversed, and Miller was approved to receive unemployment benefits.

Apparently, the reversal was based on a finding that the Postal Service rule of discharging employees who have been in a leave-without-pay status for more than a year was reasonable, but that the rule was not uniformly enforced by the Postal Service. The appeals referee concluded that the Postal Service discharged Miller at its convenience and not for just cause. Miller thus was granted and began receiving unemployment benefits.

On July 9, 1991, Miller filed this action against the Postal Service pursuant to 39 U.S.C. § 409 and 28 U.S.C. § 1346(b), alleging that the Postal Service breached an employment contract with her by discharging her. Miller further asserts that the Postal Service's rationale for discharging her, *i.e.*, because she had been in a leave-without-pay status for more than one year, was based on a policy that the Postal Service did not uniformly enforce. Miller claims that the Postal Service discharged her in retaliation for her filing for and receiving workers' compensation. Miller seeks reinstatement to a position with the Postal Service, along with back pay.

## II. *Motion Addressed and Procedural Matters*

The Postal Service filed a motion to dismiss Miller's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, contending that this court lacks subject-matter jurisdiction over this lawsuit and that Miller failed to state a claim upon which relief can be granted.

## III. *Lack of Subject Matter Jurisdiction*

 The party seeking to invoke a district court's jurisdiction bears the burden of establishing the basis for exercising such juris-

---

**3.** Dr. Pierce's December 5, 1988 "Return to Work or School" form shows that Miller would be able to return to work December 28, 1988 at four hours per day, with a five-pound lifting restriction, and no standing, bending, or reaching. His January 27, 1989 letter appears to indicate that Miller should be able to resume her normal work duties four to six weeks from December 5, 1988—or approximately the end of January, 1988. However, the Postal Service appears to have interpreted the restrictions to continue to apply.

diction. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987).

> [W]hen the party moving for dismissal under Rule 12(b)(1) challenges the factual basis for jurisdiction, the nonmoving party (i.e., the plaintiff) must submit affidavits and other relevant evidence to resolve the factual dispute regarding the court's jurisdiction.

*Id.* Here, Miller bears the burden of establishing that this court may exercise jurisdiction over her claim.

**Section 409(a) of the Postal Reorganization Act**

■ Miller attempts to base the court's jurisdiction on section 409(a) of the Postal Reorganization Act (PRA), 39 U.S.C. §§ 101 *et seq.* Section 409(a) provides:

> Except as provided in section 3628 of this title [inapplicable in this case], the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service....

Section 409(a) permits the Postal Service, an independent executive establishment created by Congress, to sue and be sued; however, it does not provide an independent basis for jurisdiction. *Peoples Gas, Light & Coke Co. v. United States Postal Serv.*, 658 F.2d 1182, 1189 (7th Cir.1981).

The PRA operates largely by incorporating other statutes, including the Federal Employees Compensation Act (FECA)[4] and parts of the Civil Service Reform Act (CSRA).[5] Chapters 10 and 12 of the PRA set out a comprehensive scheme governing employment relations within the Postal Service.

Of significance here, the PRA provides that Chapter 75 of the CSRA "shall apply to officers and employees of the Postal Service...." 39 U.S.C. § 1005(a)(1). Thus, Chapter 75 of the CSRA applies to Miller.

Chapter 75 of the CSRA, 5 U.S.C. §§ 7501–7543, establishes an appeals procedure for reviewing adverse personnel actions taken by federal agencies. Subchapter II of Chapter 75, 5 U.S.C. § 7511–7514, covers major adverse personnel decisions, including discharge from employment. 5 U.S.C. § 7512(1). A discharged employee entitled to Subchapter II protection may appeal the discharge order to the Merit Systems Protection Board (MSPB), 5 U.S.C. § 7513(d), and ultimately to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. §§ 7703(a)(1) and 7703(b)(1). The appellate court may set aside the dismissal if it finds that the discharge order was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)–(3).

However, not all federal employees are entitled to take advantage of this appeals procedure. "These rights to administrative and judicial review of adverse personnel decisions are not, however, available to all federal employees—nor to all postal workers." *Yokum v. United States Postal Serv.*, 877 F.2d 276, 278 (4th Cir.1989).

To be entitled to appeal rights under Chapter 75, postal employees must be "preference eligible employees" having completed one year of current continuous service in the same or similar positions. 5 U.S.C. § 7511(a)(1)(A) & (B). "Preference eligible" refers to veterans of the armed services and, in certain circumstances, their close relatives. 5 U.S.C. § 2108(3).

■ It is undisputed that Miller is not a preference-eligible employee.[6] In May 1989,

---

4. *See* 39 U.S.C. § 1005(c).

5. *See* 39 U.S.C. § 1005(a)(1).

6. The CSRA divides civil service employees into three general classifications:

(1) "Senior Executive Service" employees, who hold certain high-level Executive branch positions that do not require Presidential nomi-nation or Senate confirmation. 5 U.S.C. § 3132(a)(2).

(2) "Competitive Service" employees, who hold all other positions not requiring nomination and confirmation and who are not specifically excepted from the competitive service by statute or by statutorily authorized regulation. 5 U.S.C. § 2102.

the MSPB determined that Miller was not entitled to appeal rights under the CSRA because she is not a preference-eligible employee. A district court may not exercise jurisdiction to review an adverse personnel action against an employee not covered by the CSRA because she is not a preference employee. *American Postal Workers Union v. Postal Serv.*, 940 F.2d 704 (D.C.Cir.1991) (terminated probationary postal employees alleging they were fired in retaliation for filing FECA claims for work-related injuries could neither sue for breach of contract nor bring suit under the FTCA).

▄ Thus, Miller is not entitled to the appeals procedure afforded under Chapter 75 of the CSRA. This court must then consider whether Miller, as a *non*preference-eligible postal worker is entitled to any independent, nonstatutory judicial review. The answer is that she is not.

Since Congress clearly considered the question of *which* postal workers would be entitled to judicial review under Chapter 75 and ultimately chose to grant the right only to preference eligibles, it must also have intended to preclude judicial review of administrative action affecting *other* members of the "postal career service."

*Yokum*, 877 F.2d at 280. As the Fourth Circuit further stated in *Yokum*, "Congress *could* have broadened § 7511(a)(1) to cover nonpreference eligible postal workers. Since it did not, it must have meant to abrogate any nonstatutory right of judicial review purportedly available to employees so classified." *Id.* at 279.

As the United States Supreme Court stated:

The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference eligible excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter. Their exclusion from the scope of those protections can hardly be explained on the theory that Congress simply did not have them in mind, since ... Congress specifically included Chapter 75 *preference eligible* excepted service employees. § 7511(a)(1)(B).... It seems to us evident that the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by Chapter 75.

*United States v. Fausto*, 484 U.S. 439, 448–49, 108 S.Ct. 668, 674, 98 L.Ed.2d 830.

The Seventh Circuit has not addressed the jurisdictional question presented in this case in a published opinion. However, the circuits that have considered it have held that nonpreference-eligible Postal Service employees have neither a statutory nor a nonstatutory right to judicial review of adverse personnel actions.

For example, in *Yokum v. United States Postal Serv.*, 877 F.2d 276 (4th Cir.1989), the Fourth Circuit held that the district court lacked subject matter jurisdiction over a former postal worker's wrongful discharge claim because the employee was not preference eligible.

Likewise, in *Royals v. Tisch*, 864 F.2d 1565 (11th Cir.1989), the Eleventh Circuit held

---

(3) "Excepted Service" employees, who occupy all positions not classified in the "Senior Executive Service" or "Competitive Service." 5 U.S.C. § 2103.
*See United States v. Fausto*, 484 U.S. 439, 441 n. 1, 108 S.Ct. 668, 670 n. 1, 98 L.Ed.2d 830 (1988).
Veterans of the armed forces and certain of their close relatives qualify as "preference eligibles" regardless of the civil service classification of their positions. 5 U.S.C. § 2108(3).

The Postal Service and its employees are largely exempt from CSRA coverage, and thus generally do not fall within this three-tiered classification scheme. *See* 39 U.S.C. § 410(a). Most postal workers serve in the "postal career service," 39 U.S.C. § 1001(b), and are by definition "outside the competitive service." *Bredehorst v. United States*, 677 F.2d 87, 89, 230 Ct.Cl. 399 (1982).

that a nonpreference-eligible employee in the excepted service was not an "employee" as the term "employee" is defined in subchapter II of Chapter 75 of the CSRA, and thus was not entitled to judicial review of an adverse disciplinary action. The Eleventh Circuit further stated that only Postal Service employees in competitive service who are preference eligible are entitled to judicial review.

Similarly, in *Diaz v. United States Postal Serv.*, 853 F.2d 5 (1st Cir.1988), the First Circuit held that the district court did not have jurisdiction to review the merits of a Postal Service personnel decision discharging a nonpreference-eligible employee from his position as postmaster.

Further, in *Witzkoske v. United States Postal Serv.*, 848 F.2d 70 (5th Cir.1988), a Postal Service employee filed an action challenging her discharge for misconduct. The Fifth Circuit held that because she was a nonpreference employee in excepted service, she was not entitled to judicial review even though she was in "postal career service," which was part of civil service.

> [T]he application of Chapter 75 to Postal Service employees simply means that postal workers who are "employees" as defined in section 7511 have the hearing and appeal rights set forth in Chapters 75 and 77; those who are not "employees" for purposes of Chapter 75 are limited to procedures established by the Postal Service.[7]

*Id.* at 72. *See also Parker v. United States Postal Serv.*, 859 F.2d 922 (6th Cir.1988) (unpublished); *Harrison v. Brown*, 815 F.2d 1505 (D.C.Cir.1987) (CSRA precludes judicial review of nonpreference eligible employee's removal).

Even if Miller were a preference-eligible postal employee entitled to judicial review of her dismissal, jurisdiction would lie first in the MSPB, and then in the Court of Appeals for the Federal Circuit—but never in federal district court. 5 U.S.C. §§ 7513(d) and 7703. *See Yokum*, 877 F.2d at 279 n. 3; *Witzkoske*, 848 F.2d at 72 n. 2.

28 U.S.C. § 1346(b)

Miller also attempts to assert jurisdiction under the Federal Torts Claims Act, 28 U.S.C. § 1346(b). However, Miller has not shown that she complied with the statutory prerequisites for bringing such a suit. *See* 28 U.S.C. §§ 2671–2680.

■ 28 U.S.C. § 2675 requires claimants to submit a tort claim to the appropriate federal agency prior to filing suit. Submitting such a tort claim is a jurisdictional prerequisite to filing suit, and may not be waived. Failure to file a timely tort claim divests the district court of jurisdiction over suit filed on the claim. *See Best Bearings v. United States*, 463 F.2d 1177 (7th Cir.1972).

Because Miller has not alleged that she filed the appropriate tort claim with the Postal Service, no jurisdiction may arise under 28 U.S.C. § 1346(b).

■ In any event, the Federal Tort Claims Act does not afford a cause of action to an employee claiming discharge in retaliation for filing a FECA claim. *American Postal Workers Union v. United States Postal Serv.*, 940 F.2d 704 (D.C.Cir.1991).

> [N]either the CSRA, the FECA nor any other part of the PRA affords a cause of action to an employee who claims that he was discharged in retaliation for filing a FECA claim.

*Id.* at 709. The Chapter 75 scheme for review of adverse employment decisions " 'preempts the more general tort recovery statutes.' " *Id.* at 708 (quoting *Brown v. General Servs. Admin.*, 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976)). "A residual statute like the FTCA [ ] cannot coexist with a comprehensive employment relations scheme." *Id.*

### IV. *Failure to State a Claim for Relief*

The court has no statutory basis for exercising jurisdiction over Miller's claims, and will dismiss the Postal Service's motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Thus, the court will not

---

**7.** Congress mandated that the Service establish procedures for fair hearings on adverse personnel actions. 39 U.S.C.A. § 1001(b) (West 1980) (footnote in original).

address the merits of the Postal Service's motion under Rule 12(b)(6).

### V. *Conclusion*

By failing to provide the court a statutory basis with which to exercise jurisdiction over her claims, Miller has failed to meet her burden of establishing subject matter jurisdiction in this matter. Accordingly, her action must be DISMISSED.