**Laurel Sue HICKMAN, Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE and John E. Potter, Postmaster General, Defendants–Appellees.**

No. 04–1856.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 31, 2004.*

Decided Sept. 1, 2004.

Laurel S. Hickman, Chicago, IL, pro se.

Thomas P. Walsh, Office of the United States Attorney, Chicago, IL, for Defendants–Appellees.

Before BAUER, EASTERBROOK, and ROVNER, Circuit Judges.

ORDER

Laurel Sue Hickman began working as a Postal Inspector in 1994 and worked successfully in that capacity until June 1999. At that time she was investigated for allegedly asking an employee at the Chicago forensic lab to backdate requests for several handwriting analyses. She supposedly asked a lab employee to change the date she submitted the requests—May 20, 1999—to correspond with the date that she had received the requests—March 1, 1999. Ultimately Hickman was fired for making the backdating request and for subsequently denying that she had done so. Hickman then sued the United States Postal Service in federal district court, claiming that her termination violated 39 U.S.C. § 1001(b), which guarantees Postal Service employees a fair hearing on ad-

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

verse actions, and 39 U.S.C. § 1003(c), which provides that compensation and benefits for postal inspectors be comparable with certain other federal employees. Finding no basis for judicial review of the decision to fire Hickman, the district court granted the Postal Service's motion to dismiss for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). Hickman appeals, and we affirm.

Before being fired Hickman received several levels of administrative review. In January 2000, after the investigation into the alleged backdating request was completed, Hickman received notice of her proposed termination. With the assistance of counsel she then responded to the termination notice orally and in writing, but the assistant inspector in charge sustained Hickman's termination that May. Hickman appealed that decision and received a hearing and a decision from a "Step I official." That official, James J. Rowan, concluded based on the evidence from the hearing that Hickman's termination was justified. Rowan's decision parted ways with an opinion offered by the "hearing officer," who conducted the hearing and made findings of fact for Rowan's use. The hearing officer had included with his findings an "opinion" that the Postal Service's decision to terminate Hickman was "not supported by the facts." Although Rowan considered the hearing officer's "opinion," he was unpersuaded by it since the hearing officer's duty as laid out in the Employee and Labor Relations Manual is to make findings of fact, not issue an opinion. Hickman then appealed Rowan's decision to the vice president of Labor Relations ("Step II"), who concurred with Rowan's judgment that Hickman's removal promoted "the efficiency of the service."

On appeal Hickman reasserts that she is entitled to judicial review of this decision, and that, in light of the hearing officer's "opinion" at Step I that her termination was unjustified, the Step I and II officials' contrary conclusions are arbitrary and capricious. The problem with Hickman's suit, as the district court recognized, is that she is unable to identify any basis for judicial review of her discharge. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (party invoking federal jurisdiction bears burden of establishing basis for jurisdiction); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir.2003) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.").

Chapter 75 of the Civil Service Reform Act, 5 U.S.C. §§ 7501–43, provides a comprehensive scheme for administrative and judicial review of adverse actions, like Hickman's termination, taken for "efficiency of the service." *See United States v. Fausto*, 484 U.S. 439, 446–48, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *see also* 39 U.S.C. § 1005(a) (Chapter 75 applies to employees of the Postal Service). That chapter provides certain managers, supervisors, personnel employees, and "preference eligible" employees (primarily veterans and their close relatives) with a right to judicial review in the form of an appeal to the Merit Systems Protection Board, *see* 5 U.S.C. § 7513(d), and then to the United States Court of Appeals for the Federal Circuit, *see* 5 U.S.C. § 7703(a)(1), (b)(1); *see also id.* § 7511(a)(1)(A), (B). Hickman concedes, however, that she does not fit within any of these categories (and that even if she did her suit would not belong in federal district court). This would seem to be the end of the matter, since by specifically providing for judicial review in Chapter 75 for certain federal employees, Congress abrogated judicial review for nonpreference eligible postal service employees like Hickman. *See Fausto*, 484 U.S. at 448–49 (observing congressional judgment that nonpreference eligible employees "should not be able to demand

judicial review" for personnel decisions covered by Chapter 75); *see also Yokum v. United States Postal Serv.*, 877 F.2d 276, 280 (4th Cir.1989) (nonpreference eligible postal worker has neither statutory nor nonstatutory right to judicial review of dismissal); *Royals v. Tisch*, 864 F.2d 1565, 1568 (11th Cir.1989) (same); *Diaz v. United States Postal Serv.*, 853 F.2d 5, 8–9 (1988) (same); *Witzkoske v. United States Postal Serv.*, 848 F.2d 70, 72–73 (5th Cir. 1988) (same).

Hickman nonetheless claims entitlement to judicial review, pointing for support to 39 U.S.C. § 1003(c), which was amended in 1996 to provide that "[c]ompensation and benefits for all Postal Inspectors shall be maintained on a standard of comparability to the compensation and benefits paid for comparable levels of work in the executive branch of the Government outside of the Postal Service." Hickman suggests that this provision somehow implies that Congress wanted to extend not only comparable economic benefits, but also comparable rights of judicial review to those employees, like her, exempted from such review under Chapter 75 of the CSRA. She also points out that the 1996 amendment coincided with Congress's decision to create an independent Inspector General for the Postal Service so that the agency would not be reviewing itself. From this she creates the following non-sequiter: by adding § 1003(c) Congress must have intended to extend the "benefit" of judicial review to postal inspectors like her, because without it there is no check on the type of "arbitrary" decision the Postal Service allegedly made by firing her. And since Congress was concerned about the lack of independent oversight of the Postal Service, it must have wanted to provide judicial review for discharged postal inspectors.

Her position makes no sense. Neither the 1996 amendment dealing with "compensation and benefits" nor Congress's creation of an independent Inspector General to investigate agency wrongdoing has anything to do with Hickman's right to judicial review of her termination. Hickman does not point to, nor can we think of, anything that suggests that, by providing postal inspectors with comparable rights to "compensation and benefits paid," § 1003(c) somehow implies entitlement to the "benefit" of judicial review. *See Nigg v. Merit Sys. Prot. Bd.*, 321 F.3d 1381, 1384 (Fed.Cir.2003) (rejecting postal inspector's claim that reference to "standard of comparability" in § 1003(c) suggests Congressional intent "to confer on Postal Service employees all of the same legal remedies and appeal rights enjoyed by other executive branch employees"). Nor is there any reason to believe that § 1003(c) impacts the comprehensive scheme in Chapter 75 of the CSRA, which, as we have said, abrogates judicial review over employees like Hickman. The district court was thus correct to dismiss Hickman's case for lack of subject matter jurisdiction. *See Royals*, 864 F.2d at 1568; *Witzkoske*, 848 F.2d at 73.

AFFIRMED.