Paul W. BOYLE and Mark S. Smaller, Plaintiffs, Appellants,

v.

Thomas TURNAGE, Administrator of Veterans Affairs, et al., Defendants, Appellees.

No. 86–1087.

United States Court of Appeals, First Circuit.

Argued June 5, 1986.

Decided Aug. 19, 1986.

Seth M. Kalberg, Jr. with whom Douglas M. Brooks was on brief, for plaintiffs, appellants.

Karen F. Green, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., was on brief, for defendants, appellees.

* Of the Fifth Circuit, sitting by designation.

1. They named as defendants, in their official capacities, Harry Walters, the VA's Administrator of Veterans Affairs; Donald L. Custis, the Medical Director of the VA Department of Medicine and Surgery; and Barbara A. Small, the Director of the Boston VA Medical Center.

On May 5, 1986, this Court granted defendants' motion to substitute Thomas Turnage for

Before BREYER, Circuit Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

In this appeal we must determine whether the District Court erred in upholding—against a constitutional attack—the Veteran's Administration (VA) policy on the use of mace in the training and employment of VA police officers. Two VA police trainees brought this action[1] following their discharge for refusing to complete a portion of the training program which required them to be exposed to a streamer burst of mace in the face. We hold that the training requirement in question is rationally related to a legitimate government objective, and we therefore affirm.

## In Your Face

Plaintiffs-Appellants Paul Boyle and Mark Smaller were engaged in a training program for hospital police officers at the Boston Veteran's Administration (VA) Medical Center. They were both employed on a probationary status and, upon successful completion of the training program, would become VA police officers at the hospital. Since all VA policemen are armed with mace[2] instead of conventional weapons, the training program naturally requires significant instruction in the use of mace. One aspect of this instruction is the requirement that the trainees be exposed to a one-second streamer burst of mace aimed at the lower portion of the face so that the trainees might better understand the nature of this weapon.

Boyle and Smaller submitted to their supervisors letters from doctors recommending that the two trainees be excused from

Harry N. Walters, Dr. John Ditzler for Dr. Donald Custis and Jerry Boyd for Barbara A. Small as defendants-appellees, in this action.

2. Mace, or alpha-chloroacetophenone (CN), is a chemical irritant which will immediately incapacitate if sprayed in someone's face. It produces tearing of the eyes, reflex closure of the eyelids, and a burning sensation on the skin and in the upper respiratory tract.

the training requirement for medical reasons. Apparently, Boyle and Smaller decided to seek medical excuses after watching a cotrainee collapse, shake, and tremble from the effects of the mace exposure.[3] After submitting the doctor's excuses, Boyle and Smaller were both discharged from their employment for failure to complete the training requirement.

### Summary Judgment Sought

 Following the termination of their VA employment, Boyle and Smaller filed suit in federal district court, claiming that the VA training requirement violated their substantive due process rights. The defendants moved for summary judgment, submitting affidavits regarding the government's purposes in requiring the exposure of VA police trainees to a one-second streamer burst of mace. These affidavits included that of James G. Fasone, the Director of Social Security Service in the Department of Medicine and Surgery, United States Veterans Administration. Fasone is the policymaker who determined that the police trainees should be exposed to the mace.[4] The Fasone affidavit lists the following purposes of the training requirement:

(1) VA policemen should understand first-hand the effects of the spray because they are required to provide assistance to persons subjected to the spray;[5]

(2) VA policemen should mentally and physically work through the effects of mace in a non-emergency situation because it is conceivable that, in the course of performing their duties, VA policemen might have the weapon taken away and used against them by an assailant; and

(3) The training requirement allows the VA to determine whether the trainees can overcome the effects of mace and continue to perform their duties while suffering those effects.

The plaintiffs submitted opposing affidavits which primarily show the possible serious consequences of mace rather than challenge the rationality or reasonableness of the government's asserted reasons for adopting and continuing to administer the training requirement. Although the affidavit of Dr. Richard Brown, submitted by the plaintiffs, might bring into question the reasonableness of the second and third of the government's asserted purposes, nowhere have the plaintiffs challenged the rationality of the government's first asserted objective—to allow the VA police officers to experience and understand first-hand the effects of mace so the officers may be better able to provide assistance to persons subjected to the spray.

---

3. Boyle and Smaller both stated in their affidavits that the co-trainee was exposed to a streamer burst of mace lasting much longer than the required one second. They also claimed that the co-trainee was sprayed from a distance of less than three feet—much closer than the VA policy, reflected in the Chemical (CN) Irritant Projector Training Guide, of firing the weapon at a distance of no less than six feet. Finally, the plaintiffs stated in their affidavits that there was no first aid water present during their co-trainee's exposure to the mace. Although this is relevant to the constitutionality of the VA policy as applied to the co-trainee, Boyle and Smaller never submitted to the training requirement and probably have no standing to argue the co-trainee's potential claims.

4. Boyle and Smaller challenge the admissibility of Fasone's affidavit, arguing that it is not in compliance with F.R.Civ.P. 56(e), primarily on the grounds that the affidavit was not made on the personal knowledge of Fasone. We find no merit to this argument. The most vital statements in the affidavit are those dealing with the reasons for administering the training requirement. Since Fasone is the person who devised the requirement, he was certainly in the best position to state its objectives.

5. The Chemical (CN) Irritant Projector training manual reveals that the selection of mace projectors as VA police weapons was motivated in large part by a desire to incapacitate without causing lasting injury. The training manual indicates that the mace projector was selected over guns and nightsticks for this very reason. In fact, the training manual provides specific instructions relating to the treatment and handling of those suffering the effects of mace in order to prevent lasting injury.

The District Court granted the VA's motion for summary judgment, and we affirm.

### "A-macing," Yet Rational

■ The District Court correctly determined that Boyle and Smaller had no *property* interest in continued employment because of the probationary status of their jobs. That, however, does not end the inquiry. The Supreme Court has held that the right to personal safety is an historic liberty interest protected substantively by the Due Process Clause. *Youngberg v. Romero,* 457 U.S. 307, 315, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28, 37 (1982).

■ The Veterans' Administration argues, and the District Court found, that Boyle and Smaller's liberty interest in personal safety was not jeopardized or infringed here because they had the option of refusing the test and seeking employment elsewhere. This analysis is incorrect. The theory that public employment, which may be denied altogether, may be subjected to any condition however unreasonable has been uniformly rejected. *Keyishian v. Board of Regents,* 385 U.S. 589, 605–06, 87 S.Ct. 675, 685, 17 L.Ed.2d 629, 642 (1967). In *Keyishian,* in the context of freedom of religion and expression, the Court stated, "It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon [government employment]." 385 U.S. at 606, 87 S.Ct. at 675, 17 L.Ed.2d at 642. Here, as in *Keyishian,* a liberty interest (personal safety) of Boyle and Smaller was possibly infringed by a condition of public employment (the mace-in-the-face test). Therefore, in our limited role as expositors of constitutional limitations and not as experts in the training of VA security officers or the use of chemical deterrents (mace), we must determine whether the training requirement is rationally related to the government's reasons for imposing it. *See Kelley v. Johnson,* 425 U.S. 238, 247, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708, 716 (1976).

■ Boyle and Smaller must show that there is *no* rational connection between the training requirement and a legitimate government end. *Kelley,* 425 U.S. at 247, 97 S.Ct. at 1446, 47 L.Ed.2d at 716. Based upon the summary judgment affidavits, they utterly failed to do so. We having no difficulty concluding that the most legitimate reason proffered by the VA in support of its training requirement is that the burst of mace will help the officers appreciate and understand its effects so that they may better assist persons subjected to the spray. In fact, the training manual indicates that mace was the VA's preferred choice of weaponry precisely because it can incapacitate without causing lasting injury. A first hand understanding and appreciation of the effects of mace, together with the corresponding detailed instructions regarding proper use, certainly promotes the prevention of serious, or lasting, injury. Plaintiffs' affidavits, however, nowhere brought into dispute the rationality of the connection between the training requirement and this very legitimate government end. Therefore, the District Court correctly granted the VA's motion for summary judgment.

AFFIRMED.