Roberto DIAZ, Plaintiff, Appellant,

v.

UNITED STATES POSTAL SERVICE, et al., Defendants, Appellees.

No. 87–1879.

United States Court of Appeals, First Circuit.

Submitted June 10, 1988.

Decided July 27, 1988.

---

Harry Anduze Montano, Santurce, P.R., on brief, for appellant.

Lori Joan Dym, Office of Labor Law, Washington, D.C., Daniel F. Lopez–Romo, U.S. Atty., Isabel Munzo, Asst. U.S. Atty., Hato Rey, P.R., and Jesse L. Butler, Asst. Gen. Counsel, Washington, D.C., on brief for appellees.

Before BOWNES and BREYER, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

The plaintiff-appellant, Roberto Diaz, brought this suit in Federal District Court challenging his removal from his position as Postmaster of the United States Postal Service on a number of grounds. The District Court found that the decision of the Postal Service was supported by substantial evidence and granted summary judgment for the appellee. The plaintiff now appeals this decision. For the reasons set out below, we now affirm the District Court's decision.

## I. *Background*

At the time of the events involved in this case, the plaintiff was employed by the United States Postal Service as Postmaster of the Toa Baja Post Office in Puerto Rico. In March, 1984, the Postal Inspection Service began investigating the suspected theft of mail from the Toa Baja office by preparing a test parcel containing a wireless telephone. A radio transmitter hidden in the parcel enabled the inspectors to monitor the location of the parcel. The inspectors then attached to the parcel a meter strip and an address label made out to a person who had previously moved out of the Toa Baja district. The package was then sent to Toa Baja.

Shortly thereafter, the test parcel arrived at the Toa Baja station. The parcel was brought to the attention of the appellant because the addressee had moved. After the post office had closed the next day, postal inspectors observed the appellant leaving the post office. Because of the hidden transmitter, the inspectors were able to determine that the test parcel was in the appellant's car. Accordingly, the inspectors followed the appellant to his home. At the appellant's home, the postal inspectors confronted him about the test parcel. The appellant denied having any parcel even when he was told about the radio transmitter. After refusing to allow inspectors to search his car, the appellant was placed under arrest. The inspectors obtained a search warrant and searched the appellant's car, in which they found the test parcel.

The appellant was charged with obstruction of correspondence and theft of mail in violation of 18 U.S.C. §§ 1702, 1709. He was eventually acquitted by a jury. Unfortunately for the appellant, this did not end the matter. On March 27, 1984, the appel-

---

* Of the District of Massachusetts, sitting by designation.

lant received a Notice of Proposed Indefinite Suspension from the District Director, Carlos Falu. As grounds for the proposed suspension, Mr. Falu cited the criminal charges noted above, plus violations of the employee's code of conduct. On April 7, 1984, the appellant was placed on non-duty, non-pay status. By letter dated May 4, 1984, Caribbean Postal District Manager suspended the appellant as of May 11, 1984 until the criminal charges had been resolved.

Following his acquittal on the criminal charges, the appellant was returned to pay status on June 11, 1984, but was told not to report to work. Shortly thereafter, the appellant received a Notice of Proposed Adverse Action. This notice of pending removal charged the appellant with removal of mail from the mail stream and delay of mail, in violation of postal regulations, and with engaging in conduct prejudicial to the postal system, in violation of the Employee/Labor Relations Manual.

Despite the appellant's denial of these violations, the appellant was discharged from the Postal Service on October 9, 1984. The appellant exercised his right of appeal, and a hearing was held before a Postal Service hearing officer. After hearing testimony the officer prepared a summary of facts. After reviewing these findings, the Postal Service Regional Director of Employee and Labor Relations determined that the bases for appellant's removal were supported by a preponderance of the evidence. Exercising his Step II appeal rights, the appellant appealed this Step I decision to the Regional Postmaster General, John Mulligan. On June 11, 1985, the Assistant Postmaster General affirmed the Step I decision.

The plaintiff then filed this action in Federal District Court, challenging his removal. In the district court, the appellant argued that the decision to remove him was arbitrary and capricious, and that the Code of Ethical Conduct, violation of which the appellant was charged, was unconstitution-

al. The District Court reviewed the administrative record and determined that the agency's decision was supported by substantial evidence and was not arbitrary and capricious, 668 F.Supp. 88 (1987). Since the court found that the removal of mail charge and the delay of mail charge were proper, the court declined to reach the issue of the Ethics Code's constitutionality.

## II. *Analysis*

 The appellant makes a number of arguments concerning the propriety of the District Court's decision. The appellant is faced at the outset, however, with an insurmountable hurdle. The appellee argues that under the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 *et seq.*, (the CSRA), the Federal Courts do not have jurisdiction to review the merits of this personnel decision.[1] We agree.

We begin by noting that the appellant fails to state the basis for his cause of action challenging the merits of the Postal Service's decision. The only possible basis of which we are aware for the plaintiff's cause of action are the laws governing personnel decisions of the Postal Service. We therefore turn to those statutes.

In order to understand the procedural rights of the appellant, we must first examine the somewhat convoluted statutory scheme governing personnel decisions of the Postal Service. As an initial matter, Congress provided, with certain exceptions, that no federal law dealing with employees shall apply to the exercise of the powers of the Postal Service. 39 U.S.C. § 410(a) (1980). Thus, unless specifically provided, the Postal Service is not bound by the federal employment laws governing other government agencies. The statute goes on, however, to provide a number of exceptions. The applicable exception for our purposes is that Chapter 75 of Title 5 shall apply to employees of the Postal Service. 39 U.S.C. § 1005(a) (1980).

Chapter 75, as codified at 5 U.S.C. § 7501 *et. seq.* was enacted as part of Civil Service

---

1. We note that the issue of subject-matter jurisdiction, though not raised below, is properly raised on appeal. *Hydrogen Technology Corp. v.*

*United States,* 831 F.2d 1155, 1162 n. 6 (1st Cir.1987).

Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 *et seq.* (codified, as amended, in various sections of 5 U.S.C. (1982 ed. and Supp. IV)). The CSRA completely revamped the traditional civil service system, and created an elaborate system for reviewing personnel actions taken by agencies. *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985). As part of this system, Chapter 75 sets out procedural safeguards for "employees" suffering certain adverse personnel actions. Removal from office is an adverse action covered by this subchapter. 5 U.S.C. § 7512 (1980). When an agency removes an employee from office, the employee is entitled to appeal his removal to the Merit Systems Protection Board (the MSPB). 5 U.S.C. § 7513(d). Any employee adversely affected by a decision of the MSPB may then obtain judicial review of that decision in the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703. A court shall set aside the agency decision if it is found to be arbitrary or capricious, an abuse of discretion, obtained without procedures required by law, or unsupported by substantial evidence. 5 U.S.C. § 7703(c). Thus, an employee who is removed from office may appeal his removal to the MSPB and subsequently to the Court of Appeals for the Federal Circuit.

These rights of appeal, however, are not provided to everyone employed by a government agency. Only "employees" are protected by the safeguards of Chapter 75. For the purposes of this chapter, an employee is defined as:

(a) an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or who has completed 1 year of current continuous employment under other than

a temporary appointment limited to 1 year or less; and

(b) a preference eligible in an Executive agency in the excepted service, and a preference eligible in the United States Postal Service or the Postal Rate Commission, who has completed 1 year of current continuous service in the same or similar positions.

5 U.S.C. § 7511(a).[2] Since the appellant is not a preference eligible employee in the Postal Service,[3] he does not have the right under this chapter to appeal his removal to the MSPB and, subsequently, to federal court. The issue, then, is whether a nonpreference eligible employee of the Postal Service may seek judicial review of the merits of an adverse personnel action. We hold that he may not.

The United States Supreme Court recently dealt with a very similar question in *Fausto v. United States,* —— U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 *reh'g denied,* —— U.S. ——, 108 S.Ct. 1250, 99 L.Ed.2d 448 (1988). In that case, a nonpreference eligible member of the Fish and Wildlife Service, an excepted service, was suspended without pay for thirty days. After his suspension was upheld by the Department of the Interior, the employee challenged his suspension in the Claims Court in an action for back pay under the Back Pay Act, 5 U.S.C. § 5596, and the Tucker Act, 28 U.S.C. § 1491. *Id.* 108 S.Ct. at 671. Despite the fact that the employee had no right of appeal to the MSPB under the CSRA, the Claims Court held that the CSRA did not preclude the employee from seeking review under the Tucker Act. *Id.*

The Supreme Court reversed, holding that the CSRA precluded judicial review of the agency's decision. The Court examined the statutory scheme of the CSRA and concluded that the exclusion of nonpreference members of the excepted service from

---

**2.** In 1987, Congress amended the Postal Service Reorganization Act to extend the protections of Chapter 75 to management or supervisory employees of the Postal Service, and to employees of the Postal Service who are engaged in personnel work in other than a purely nonconfidential clerical capacity. Pub.L. No. 100–90, 101 Stat. 673, codified at 39 U.S.C. § 1005(a)(4)(A)(ii) (1988 Supp.). This amendment, however, does

not apply to actions begun prior to September 16, 1987. Pub.L. 100–90 § 1(b)(2). Therefore, the appellant may not claim the benefit of this amendment.

**3.** Preference eligible employees are veterans and certain relatives of veterans. 5 U.S.C. § 2108(3).

the definitional section of Chapter 75 was a conscious decision by Congress to deny the excluded employees judicial review of personnel actions covered by that chapter. *Id.* at 673.

The holding of *Fausto* is applicable to this case. The CSRA expressly grants judicial review of removal actions to preference eligible members of the Postal Service. This implies that nonpreference employees such as the appellant may not obtain judicial review of actions covered by Chapter 75. In enacting the CSRA, Congress intended to create a system that would provide more unified and consistent decision making. *Id.* at 674. Allowing employees such as the appellant to bypass Chapter 75 and seek judicial review of personnel actions would thwart this goal. Moreover, if excluded classes of employees could get a district court in the first instance to review the merits of the agency's decision, they would be in a better position than preference eligible employees, who must follow the procedural route laid out in Chapter 75. *Id.* at 674. It is clear, however, that Congress intended to provide preference eligible employees with greater safeguards than excluded classes of employees, such as probationary employees. *Id.* Therefore, the CSRA precludes the district court from reviewing the merits of an adverse personnel action taken against one who is not covered by Chapter 75 of Title 5. Accordingly, the district court did not err in dismissing the appellant's nonconstitutional claims. *See also Witzkoske v. United States Postal Service,* 848 F.2d 70 (5th Cir.1988) (holding that the district court lacked jurisdiction to review the Postal Service's decision to discharge the plaintiff); *Harrison v. Bowen,* 815 F.2d 1505 (D.C.Cir.1987) (holding that the CSRA forecloses judicial review of nonpreference eligible employee's removal).

4. Section 661.3(f) provides, "Employees must avoid any action, whether or not specifically prohibited by this Code, which might result in or create the appearance of affecting adversely the confidence of the public in the integrity of the Postal Service." 39 C.F.R. § 447.21(a)(6).

Section 661.53 states,

■ The appellant makes a final argument that the district court erred in not addressing the constitutionality of sections 661.3(f) and 661.53 of the Employee's Code of Ethical Conduct.[4] Since the charge of removing mail from the mail stream alone was sufficient grounds on which to discharge the appellant, the court declined to address the constitutionality of sections 661.3(f) and 661.53.

■ We agree with the appellant that the district court should have addressed this issue. The court is correct in noting that when possible, a case should be decided without reference to federal constitutional questions. *Catrone v. Massachusetts State Racing Commission,* 535 F.2d 669, 671 (1st Cir.1976). This rule usually applies when a court is faced with a regulation or statute which, if interpreted or applied one way, raises constitutional questions, but if interpreted another way, avoids those constitutional questions. *See, e.g., Jean v. Nelson,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (court below should have determined whether agency officials violated their own regulations before addressing issue of whether the official's actions were unconstitutional); *Catrone,* 535 F.2d 669 (holding that the district court should have abstained from deciding whether the defendants violated the plaintiff's constitutional rights until the state court determined whether the defendants acted contrary to state law).

In this case, however, we have a different situation. The appellant was discharged for violating three sections of the Employee's Code of Conduct. The appellant claimed that two of the sections were unconstitutional. Even if the third section was sufficient to discharge the appellant, the two allegedly unconstitutional sections still played a part in the decision to discharge the appellant. If the challenged sections of the Code of Conduct were un-

No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service. Conviction of a violation of a criminal statute may be grounds for disciplinary action by the Postal Service, in addition to any other penalty by or pursuant to statute. 39 C.F.R. § 447.25(c).

constitutional, then the Postal Service could not rely on those sections in taking action against the appellant. In such circumstances, the court might have been required to remand the case to the Postal Service to determine whether discharge was the proper course in light of a single violation of the Code of Conduct. *See Salt River Project Agricultural Improvement and Power District v. United States*, 762 F.2d 1053, 1061 n. 8 (D.C.Cir.1985) (noting that when an agency relies upon a number of findings, one or more of which are erroneous, the court must reverse only when there is a significant chance, but for the errors, the agency might have reached a different result); *Siang Ken Wang v. I.N.S.*, 413 F.2d 286 (9th Cir.1969) (reversing and remanding a deportation order where the I.N.S. based its decision on four factors, one of which was improperly considered); *American Public Transit Ass'n v. Lewis*, 655 F.2d 1272, 1279 (D.C.Cir.1981) (remanding regulations to the agency despite the existence of valid grounds for promulgation where the agency relied on improper grounds rather than on the proper grounds). Since the court would have been required to remand the case to the Postal Service if §§ 661.3(f) and 661.53 were found to be unconstitutional, the court should have addressed the constitutionality of those sections.

Although the district court erred in not addressing the question of constitutionality, this error was of little consequence since the appellant's constitutional arguments are clearly without merit. The appellant's chief argument below was that the challenged regulations impose upon the appellant the "unreasonable burden" of controlling what is published by the press.[5] The appellant errs in several ways. To begin with, the appellant misconstrues the regulation. Section 661.3(f) requires that postal employees not engage in activities which might result in, or create the appearance of, affecting adversely the confidence of the public in the integrity of the Postal Service. Plainly, the regulation is not concerned with what the media in fact publishes, but rather with what would reflect badly upon the Service if it was published. As such, what the media actually publishes is irrelevant to whether an employee violates this regulation. Thus, the regulation does not impose upon appellant the unreasonable burden of controlling the press.

■■ Ignoring the appellant's mischaracterization of the regulation, § 661.3(f) is clearly constitutional. In challenging the constitutionality of a regulation under the Due Process Clause, the appellant must show that there is no rational relation between the regulation and a legitimate governmental objective. *Boyle v. Turnage*, 798 F.2d 549, 552 (1st Cir.1986). It cannot be seriously questioned that the Postal Service, or any governmental agency for that matter, has a legitimate interest in maintaining public trust in the agency and its employees. Maintaining this trust is especially important for the Postal Service. In recent times, the Postal Service has been faced with increased competition from private organizations. If the Service is to compete effectively with these private groups, it is essential that it maintain an image of trustworthiness and integrity. Thus, public trust in the Service's employees is necessary for efficient functioning of the Service. *Munnelly v. United States Postal Service*, 805 F.2d 295, 301 (8th Cir. 1986). Since public trust is built largely on appearances, it is reasonable for the Service to prohibit actions which might reflect negatively on the Service. We cannot say, therefore, that § 661.3(f) is unrelated to a legitimate governmental interest. In light of our holding that § 661.3(f) does not on its face violate the Due Process Clause, the district court's summary judgment denying declaratory and injunctive relief is affirmed.

*Affirmed.*

5. The appellant does not specify with which substantive constitutional right the regulations interfere. We assume he is arguing that his discharge based on these regulations deprived him of his property interest in continued government employment without due process of law. We also note that the appellant's argument applies only to § 661.3(f). The appellant did not present any arguments relating to the constitutionality of § 661.53.