St. Louis v. Eldredge                CV-95-178-B   01/26/96
                UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Vincent St. Louis</u>

     v.                                Civil No. 95-178-B

<u>Carleton Eldredge, et al.</u>



                         **O R D E R**

     Vincent St. Louis alleges that the Portsmouth police chief,

a Portsmouth city councilor, the City of Portsmouth and its

attorneys, and Rockingham County and its attorneys participated

in a conspiracy to deprive St. Louis of his constitutional

rights.  Defendants challenge St. Louis's claims in motions for

summary judgment.  The individual defendants invoke the doctrines

of absolute and qualified immunity and the city and county

defendants contend that St. Louis's evidence will not support

municipal liability claims.



                    **I.  BACKGROUND**

     St. Louis owns and operates the Spaulding Book and Video

Store in Portsmouth, New Hampshire.  Spaulding distributes

pornographic books and videos and also maintains booths where the

videos can be viewed on site.

Spaulding encountered significant opposition from the time
it opened for business in April 1993. One of its abutters,
Janice Wood, unsuccessfully challenged Spaulding's occupancy
permit and the city council considered but ultimately declined to
adopt a comprehensive anti-pornography ordinance that would have
put Spaulding out of business. During debate on this ordinance,
Councilor William Wagner allegedly stated that the city should
"do whatever it takes to shut [Spaulding] down."

In response to this public pressure, defendant Carlton
Eldredge, who was then Rockingham County Attorney, formed a task
force of law enforcement officials in May 1993 to investigate
Spaulding and other sexually explicit businesses in Portsmouth.
Task force members made undercover visits to Spaulding and
several other stores and collected evidence indicating that
sexual acts were being performed on the premises. As a result,
Eldredge filed an equity petition in Rockingham County Superior
Court in July 1993, seeking to have Spaulding and other similar
businesses closed as public nuisances.

In September 1993, Janice Wood and a group of other citizens
formed the "Citizens Community Standards Committee of Rockingham
County." The committee declared that its first project would be

2

"to insist upon enforcement of the laws prohibiting the sale of obscene magazines, videos, and other materials." On September 27, 1993, Portsmouth Police Chief William Burke sent the Rockingham County Sheriff and other chiefs of police in Rockingham County an invitation to attend the committee's October 26, 1993, meeting. Both Burke and Eldredge later attended the meeting.[1]

On October 4, 1993, the Portsmouth city council passed an ordinance entitled "Adult-Oriented Establishments." This ordinance requires that every "adult-oriented establishment" be well lighted and that the interiors of video viewing booths be "clearly visible" from the common areas of the establishment. The ordinance also prohibits doors and other obstructions that would block visibility into video viewing areas. City Attorney Robert Sullivan assisted the council in drafting the ordinance.

On January 6, 1994, Portsmouth Police Detective Albert Kane, working under Eldredge's direction, purchased a sexually explicit videotape from Spaulding entitled "Colossal Combo." Eldredge then caused a criminal obscenity complaint to be filed against

---

[1] The record contains no evidence concerning what occurred at this meeting.

3

St. Louis. Assistant County Attorney Robert E. Ducharme led the prosecution team, and Eldredge appointed Bruce Green, a private lawyer affiliated with an anti-pornography organization, to act as an assistant prosecutor in the case. In January 1995, Eldredge informed a newspaper reporter that the prosecution was "the first step in a deliberate calculated plan to drive porn stores out of business . . . ." Nevertheless, in February 1995, St. Louis was found not guilty.

On August 31, 1994, Assistant City Attorney, Sharon Cuddy, wrote a letter to Spaulding's attorney demanding that Spaulding comply with its parking plan. Cuddy conceded in a subsequent letter that the city could not base an enforcement action on Spaulding's failure to comply with the plan. However, she intimated that Spaulding might become the subject of an enforcement action or litigation commenced by Wood if it allowed its patrons to back out onto a city street or otherwise interfere with a right of way.

St. Louis filed this action on April 5, 1995. He bases his federal claims on his Fourteenth Amendment right to due process

4

and his First Amendment right to free speech.[2]  He alleges that:
(1) former County Attorney Carleton Eldredge, current County
Attorney William Hart, Assistant County Attorney Robert Ducharme,
and Police Chief Burke are liable for investigating St. Louis,
commencing the civil nuisance suit against him, and prosecuting
him on the obscenity charges; (2) Councilman Wagner and City
Attorney Sullivan are liable for their roles in drafting and
enacting the Adult-Oriented Establishments Ordinance; and (3)
Assistant County Attorney Cuddy is liable for attempting to
enforce the parking plan.  He also alleges that all of the
individual defendants are liable as conspirators.  Finally, he
contends that the city and county defendants are liable for the
actions of their employees.

The individual defendants base their summary judgment
motions on the doctrines of absolute and qualified immunity.
Specifically, the prosecutors contend that they are entitled to
absolute prosecutorial immunity, Councilman Wagner and City
Attorney Sullivan contend that they are protected by absolute
legislative immunity, and all of the individual defendants claim

---

[2]  The First Amendment potentially applies here because it
has been incorporated into the Fourteenth Amendment.  See Vote
Choice, Inc. v. Distefano, 4 F.3d 26, 31 (1st Cir. 1993).

qualified immunity.  The municipal defendants argue that St. Louis has not produced enough evidence to establish that he has a triable municipal liability claim against either defendant.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate if the facts taken in the light most favorable to the nonmoving party show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 4 (1st Cir. 1994).  On issues that the nonmoving party must prove at trial, the moving party initially need allege only that the nonmoving party lacks sufficient evidence to support its case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmoving party cannot rely on the pleadings alone to oppose summary judgment, but must come forward with properly supported facts to demonstrate a genuine factual dispute for trial.  Id. at 323-24.  A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the facts are undisputed, the moving

6

party must establish that it is entitled to judgment as a matter of law.  <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 764 (1st Cir. 1994).  I apply these standards in ruling on defendants' motions.

## IV.  DISCUSSION

### A.  Individual Defendants

#### 1.  Prosecutorial Immunity

Absolute prosecutorial immunity shields a prosecutor from suit for actions taken in his or her "`"role as advocate for the State."'"  <u>Guzman-Rivera v. Rivera-Cruz</u>, 55 F.3d 26, 29 (1st Cir. 1995) (quoting <u>Burns v. Reed</u>, 500 U.S. 478, 491 (1991), in turn quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430-31 n.33 (1976)).  However, a prosecutor is not entitled to absolute immunity for actions taken in an administrative or investigative capacity.  <u>Guzman-Rivera</u>, 55 F.3d at 29.  Thus, a defendant's right to absolute immunity will depend upon "`the nature of the function performed, not the identity of the actor who performed it.'"  <u>Buckley v. Fitzsimmons</u>, 113 S. Ct. 2606, 2613 (1993) (quoting <u>Forester v. White</u>, 484 U.S. 219, 229 (1988)).  At one end of the functional spectrum, actions that are "intimately associated with

7

the judicial phase of the criminal process," such as initiating a prosecution and presenting the state's case, are clearly protected.  Imbler, 424 U.S. at 430-31.  At the other end, actions that are commonly carried out by police officers or other personnel and are removed from the judicial process, such as investigating for evidence to support a probable cause determination, are entitled only to qualified immunity.  Buckley, 113 S. Ct. at 2616.

Absolute immunity plainly shields the prosecutors in the present case from suit for any claim based upon their decision to charge and prosecute St. Louis for obscenity violations.  It also protects Eldredge from liability based upon his selection of the prosecutors who would handle the case in court.  There is simply no basis for St. Louis's claims that the doctrine does not apply to a prosecutor's charging decision.  See, e.g., Harrington v. Almy, 977 F.2d 37, 40 (1st Cir. 1993) ("the interest that prosecutorial immunity is designed to protect--independence in the charging decision--is implicated whether the decision is to initiate a prosecution or decline to do so").  Nor does First Circuit precedent support St. Louis's claim that the defendants forfeited their right to prosecutorial immunity if they were driven to prosecute him by an improper motive.  Wang v. New

8

Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 702 (1st Cir. 1995).  Therefore, defendants are entitled to absolutely immunity with respect to such claims.

Eldredge is also entitled to absolute immunity with respect to any claims based upon his decision to bring a civil nuisance suit against St. Louis.  Actions undertaken by a government lawyer in a civil action that are functionally equivalent to actions undertaken by a prosecutor in a criminal prosecution are also entitled to absolute immunity.  Mendenhall v. Goldsmith, 59 F.3d 685, 689-91 (7th Cir.), cert. denied, 116 S.Ct. 568, (1995); Speer v. Town of West Hartford, 954 F.2d 63, 66 (2nd Cir.), cert. denied, 113 S. Ct. 66 (1992); Schrob v. Catterson, 948 F.2d 1402, 1411 (3d Cir. 1991).  The county attorney's effort to close Spaulding through a civil nuisance action is functionally equivalent to his later decision to prosecute.  Therefore, he is entitled to absolute immunity for any liability stemming from that decision.[3]

---

[3] The prosecutors are not entitled to absolute immunity to the extent that they have been sued based on their involvement in either the investigation leading up to the obscenity prosecution, or a broader conspiracy involving the other defendants.  See Guzman-Rivera, 55 F.3d at 29.  Therefore, I evaluate the sufficiency of these claims below under the qualified immunity standard.

9

2.  <u>Legislative Immunity</u>

City councilors and their surrogates are entitled to absolute legislative immunity from § 1983 claims based on legislative acts.  See <u>National Ass'n of Social Workers v. Harwood</u>, 69 F.3d 622, 629 (1st Cir. 1995); <u>Acevedo-Cordero v. Cordero-Santiago</u>, 958 F.2d 20, 23 (1st Cir. 1992).  As with prosecutorial immunity, a functional approach is used to determine a defendant's right to legislative immunity.  <u>Harwood</u>, 69 F.3d at 629.  Thus, a legislator or his surrogate will be entitled to legislative immunity for acts that are "`an integral part of the deliberative and communicative processes by which Members participate in . . . proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters [committed to their jurisdiction].'"  <u>Harwood</u>, 69 F.3d at 632 (quoting <u>Gravel v. United States</u>, 408 U.S. 606, 625 (1972).

Using this standard, Councilor Wagner is plainly entitled to absolute legislative immunity from claims based upon statements he made at a public hearing on a proposed ordinance.  City Attorney Sullivan is likewise entitled to immunity from suit based upon acts Sullivan allegedly undertook in assisting the council with the proposed ordinance.  <u>See, e.g.</u>, <u>Ellis v. Coffee</u>

10

County Bd. of Registrars, 981 F.2d 1185, 1992-94 (11th Cir. 1993) (county attorney protected by absolute legislative immunity for his role in assisting the county commissioners with their legislative responsibilities); Aitchinson v. Raffiani, 708 F.2d 96, 99 (3d Cir. 1983) (borough attorney absolutely immune from liability for drafting legislation).

3. Qualified Immunity

Public officials performing discretionary functions are entitled to qualified immunity from suit for violations of federal law "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A "necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991). Therefore, if a plaintiff fails to state a federal claim or if he cannot produce enough evidence to support his claims to survive a motion for summary judgment, the defendant is necessarily entitled to qualified immunity. St. Hilaire v. City of Laconia, 885 F. Supp. 349, 354

11

(D.N.H.), aff'd, 71 F.3d 20 (1st Cir. 1995). Accordingly, I examine the sufficiency of the evidence supporting St. Louis's federal claims against each individual defendant.

### a. Due Process Claims

St. Louis has relinquished his Fourteenth Amendment equal protection claim, but alleges that defendants violated his rights under the Fourteenth Amendment's due process clause. To the extent that St. Louis claims that defendants violated his right to substantive due process, such claims are cognizable, if at all, as First Amendment violations rather than as substantive due process claims. See Albright v. Oliver, 114 S. Ct. 807, 813 (1994); Graham v. Connor, 490 U.S. 386, 395 (1989). Further, to the extent that St. Louis intends to assert procedural due process claims based on the defendants' wrongful commencement and prosecution of civil and criminal proceedings, those claims also fail because state law provides adequate post-deprivation remedies. See Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995). Since St. Louis has offered no other grounds to support his due process claims, all of the defendants are entitled to qualified immunity with respect to such claims.

### b. First Amendment Claims

St. Louis's claims that defendants conspired to violate his

First Amendment rights are at the heart of his complaint.  In order to prove these claims, St. Louis must establish first that defendants intended to inhibit speech protected by the First Amendment, Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994), and second that defendants' conduct had a chilling effect on the protected speech that was more than merely "speculative, indirect, or too remote," Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989).  Otherwise lawful actions may violate the First Amendment if they are undertaken with the intent to inhibit protected speech.  Smart v. Board of Trustees of University of Illinois, 34 F.3d 432, 434-35 (7th Cir. 1994); but see Mozzochi v. Borden, 959 F.2d 1174, 1186 (2d Cir. 1992) ("an individual does not have a right under the First Amendment to be free from a prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government").

Each defendant may be held liable as a result of his or her own actions or as a result of the actions of a co-conspirator.  However, in order to prove his conspiracy claims, St. Louis must demonstrate that a conspiracy existed among the defendants and that at least one of the conspirators, acting in furtherance of the conspiracy, violated St. Louis's First Amendment rights.

13

<u>Earle v. Benoit</u>, 850 F.2d 836, 843 (1st Cir. 1988). Applying these standards, I consider the sufficiency of the evidence supporting St. Louis's claim against each of the individual defendants.

### 1. Chief Burke

St. Louis alleges that Chief Burke is liable because he: (1) helped organize persons who advocate the prohibition of pornographic materials; (2) participated in targeting St. Louis for investigation; (3) caused a Portsmouth police officer to purchase a sexually explicit video from St. Louis's store; and (4) caused St. Louis to be charged with criminal obscenity. He also alleges that Burke is liable as a co-conspirator with the other defendants. In a responsive affidavit, Chief Burke admits that he met on more than one occasion with a citizens' group that had been organized to encourage the enforcement of the obscenity laws. He also acknowledges that he followed the county attorney's instruction to have a police officer purchase materials from Portsmouth's three adult bookstores. Finally, he admits that he followed an assistant county attorney's instruction to use certain language in the complaints charging St. Louis with criminal obscenity violations. However, Burke denies that he acted with an improper motive or was involved in a

14

conspiracy, and St. Louis has failed to produce any evidence that would permit a rational factfinder to conclude otherwise. Accordingly, Burke is entitled to summary judgment with respect to these claims.

### 2. City Attorney Sullivan

St. Louis alleges that City Attorney Sullivan is liable because he: (1) drafted the Adult-Oriented Establishments Ordinance for the city council; (2) assisted the city council with respect to other legislative actions that affected St. Louis; and (3) caused St. Louis to be charged with criminal obscenity violations. I have already determined that Sullivan is entitled to absolute immunity from claims based on his role in assisting the council with its legislative responsibilities. St. Louis has produced no evidence to contradict Sullivan's assertions that he was uninvolved in the decision to charge St. Louis and that he never participated in a conspiracy to deprive St. Louis of his First Amendment rights. Therefore, St. Louis's claims against Sullivan necessarily fail.

### 3. Assistant City Attorney Cuddy

St. Louis alleges that Assistant Attorney Cuddy is liable because she: (1) wrote two letters to St. Louis's attorney suggesting that Spaulding was not complying with its parking

15

plan; and (2) caused St. Louis to be charged with criminal obscenity violations. Cuddy admits writing the letters, but contends that she was merely responding to an abutter's complaint. She also denies having any involvement in the decision to prosecute St. Louis. St. Louis has offered no evidence to counter these assertions or to otherwise establish that Cuddy participated in a conspiracy to deprive St. Louis of his constitutional rights. Therefore, these claims necessarily fail.

### 4. City Councilor Wagner

St. Louis alleges that Councilor Wagner is liable because he stated at a city council meeting that: (1) St. Louis had lied to the zoning board of adjustment; and (2) the city should shut down St. Louis's business regardless of the law. I have already determined that Wagner is entitled to absolute immunity for these acts. Since St. Louis has failed to support his claim that Wagner was part of a conspiracy to deprive St. Louis of his constitutional rights, St. Louis's claims against Wagner also fail.

### 5. Assistant County Attorney Ducharme

St. Louis alleges that Assistant County Attorney Ducharme: (1) participated in the investigation of St. Louis; (2) caused a

16

Portsmouth police officer to purchase a pornographic videotape from Spaulding; (3) caused St. Louis to be charged with criminal obscenity; and (4) caused St. Louis to be prosecuted on the criminal obscenity charges. I have already determined that Ducharme is entitled to absolute immunity with respect to any involvement he may have had in the decision to prosecute St. Louis. Since Ducharme denies the rest of St. Louis's claims, including his conspiracy claim, and St. Louis has produced no evidence to support them, these claims necessarily fail.

6. <u>County Attorney Eldredge</u>

St. Louis alleges that former County Attorney Eldredge: (1) caused St. Louis to be investigated; (2) commenced a civil nuisance action against him; (3) helped organize persons who advocated the prohibition of pornographic materials; (4) caused a Portsmouth police officer to purchase a pornographic video from Spaulding; (5) caused plaintiff to be charged with criminal obscenity violations; and (6) appointed a private attorney who was affiliated with an organization that promotes a ban on pornographic materials to prosecute St. Louis.

I have already determined that Eldredge is entitled to absolute immunity for his decisions to: (1) file the civil nuisance action; (2) hire Attorney Green as a special assistant

17

county attorney; and (3) prosecute St. Louis. Therefore, he is not subject to suit for violations of federal law based on these actions. Although St. Louis alleges that Eldredge organized a citizen's group that sought to prohibit the distribution of pornographic materials, the only evidence he has produced suggests that the group's goal was limited to the enforcement of the state's obscenity laws. Since the First Amendment does not apply to obscene speech, Sable Communications of Cal. v. F.C.C., 492 U.S. 115, 123 (1989), St. Louis cannot prove that Eldredge acted improperly merely by demonstrating that he assisted a citizen's group with its constitutionally permissible goal of eliminating obscene speech. St. Louis has also failed to produce any evidence to support his claim that Eldredge conducted the investigation for any reason other than to investigate possible violations of the state's obscenity laws. Therefore, these claims also fail.

7. County Attorney Hart

St. Louis alleges that County Attorney Hart is liable because he: (1) caused St. Louis to be prosecuted on criminal obscenity charges; and (2) appointed Janice Wood to an advisory committee. I have already determined that Hart is entitled to absolute immunity with respect to the decision to prosecute St.

18

Louis.  Since St. Louis has failed to indicate how Hart's appointment of Wood is relevant to this case, Hart is entitled to summary judgment on this claim.[4]

**B.    Municipal Defendants**

The City of Portsmouth and Rockingham County may be held liable under § 1983 even though all of the individual defendants are protected from suit by either absolute or qualified immunity. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S. Ct. 1160, 1162 (1993) ("municipalities do not enjoy immunity from suit -- either absolute or qualified -- under § 1983").  Accordingly, I consider whether St. Louis has offered sufficient evidence to support his municipal liability claims.

In order to succeed with a municipal liability claim, a § 1983 plaintiff must demonstrate that: (1) a municipal policymaker intentionally adopted a policy, implemented a training protocol, or allowed a custom to develop; (2) the challenged policy, training protocol, or custom caused a violation of the plaintiff's federally protected rights; and (3) the policymaker acted with at least deliberate indifference to the strong

_____

[4]  Hart's request for attorney's fees is denied.

19

likelihood that a violation of federally protected rights would result from the implementation of the policy, training protocol, or custom. Canton v. Harris, 489 U.S. 378, 385 (1989); Manarite v. Springfield, 957 F.2d 953, 958 (1st Cir.), cert. denied, 506 U.S. 837 (1992). A city's legislative body may set policy for the city. Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986). Moreover, even a single action by a municipal official may qualify as a policy if the decision was "made by the official charged with the final responsibility for making it under local law." Harrington, 977 F.2d at 45; St. Louis v. Praprotnik, 485 U.S. 112, 124, 143 (1988); Pembaur, 475 U.S. at 483.

St. Louis argues that the city council's discussion and adoption of the Adult-Oriented Establishment Ordinance established a city policy to interfere with his protected rights. I reject this argument because St. Louis concedes that the ordinance is constitutional,[5] and the passage and enforcement of

_____

[5] St. Louis's concession appears to be sound. A New Hampshire court has already determined that the ordinance is constitutional. See James N. Rossetti d/b/a The Fifth Wheel v. City of Portsmouth, No. 94-C-165, slip op. (N.H. Superior Court, Sept. 15, 1995). Moreover, courts in other jurisdictions that have considered nearly identical ordinances have found them to be constitutional as well. See Mitchell v. Commission on Adult Entertainment Establishments, 10 F.3d 123, 139-44 (3d Cir. 1993) (citing cases from other jurisdictions).

20

a valid ordinance does not violate St. Louis's rights, regardless of the motivations of the councilors who adopted the ordinance. See <u>Renton v. Playtime Theatres, Inc.</u>, 475 U.S. 41, 47-48 (1986); <u>see also</u> <u>United States v. O'Brien</u>, 391 U.S. 367, 382-86 (1968). Therefore, St. Louis's municipal policy claim against the city necessarily fails.[6]

St. Louis asserts that state law qualifies the county attorney as a county policymaker.[7] <u>See</u> N.H. Rev. Stat. Ann. §§

---

[6] To the extent that St. Louis attempts to base his claim against the city on unexplained "cease and desist orders" or a delay in issuing his gaming license, he has failed to provide sufficient factual support to withstand defendants' summary judgment motions.

[7] County attorneys act under the Attorney General's supervision when they enforce the state's criminal laws. N.H. Rev. Stat. Ann. § 7:34; <u>see also</u> <u>Wyman v. Danais</u>, 101 N.H. 487 (1958). Other courts have concluded in similar circumstances that a county is not liable for a county attorney's prosecutorial decisions because the county attorney acts in that capacity as an agent of the state. <u>See</u> <u>Baez v. Hennessy</u>, 853 F.2d 73, 77 (2d Cir. 1988), <u>cert. denied sub nom.</u>, <u>Baez v. County of Onondaga</u>, 488 U.S. 1014 (1989); <u>Owens v. Fulton County</u>, 877 F.2d 947, 950 (11th Cir. 1989); <u>but</u> <u>see</u> <u>Walker v. City of New York</u>, 974 F.2d 293, 301 (2d Cir. 1992) (district attorney acts as a county policymaker in some circumstances), <u>cert. denied</u>, 113 S.Ct. 1387, 1412 (1993). Further, it might be argued that a county attorney is not a county policymaker even if he is not acting as an agent of the state because he or she is under the direction of the County Commissioners when acting in any capacity other than a prosecutorial capacity. N.H. Rev. Stat. Ann. § 7:34. Since the county does not challenge St. Louis's assertion that the county attorney was acting as a municipal policymaker in this case, I

21

7:6, 34 (1988). Therefore, he contends that the county is liable for Eldredge's alleged policy decision to suppress his First Amendment rights through a baseless obscenity prosecution.

St. Louis's prosecution was based on the fact that his store distributed the Colossal Combo videotape. St. Louis has offered affidavits from two expert witnesses who assert that no reasonable person in Eldredge's position could have concluded that the Colossal Combo videotape was obscene. This evidence is sufficient to permit a rational jury to conclude that Eldredge decided to proceed with the prosecution even though he knew that the videotape was not obscene. In that case, the jury would rationally conclude that the prosecution was motivated by a desire to suppress protected and non-obscene speech. Actions pursuant to a county policy to suppress protected speech can be the basis for a § 1983 claim against the county. Therefore, Rockingham County's motion for summary judgment on this claim is denied.

---

decline to delve more deeply into the complicated questions St. Louis's assertion raises.

22

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (document nos. 15 and 18) are granted as to all of St. Louis's federal claims except his First Amendment claim against Rockingham county.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

January 26, 1996

cc:  Brian Stern, Esq.
     Donald Gardner, Esq.
     William Scott, Esq.